1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL B. SMITHSON,

                    Plaintiff,

          v.

DARYL JONATHAN HAMMOND, SARAH

LEWIS, AMBER SMITH, RICHARD

HENDRICKS, ALEX MCBAIN

                    Defendants.

Case No. 3:22-cv-05029-TMC

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

**ORDER**

Before the Court is Defendants' motion for summary judgment. Dkt. 22. Plaintiff Daniel

B. Smithson's ("Smithson's") complaint asserts claims under 42 U.S.C. § 1983 for excessive

force under the Fourth and Fourteenth Amendments; cruel and unusual punishment under the

Eighth and Fourteenth Amendments; arrest and imprisonment without a hearing under the

Fourth, Fifth, Eighth, and Fourteenth Amendments; and unconstitutional policy, practice, or

custom under the Fourth, Fifth, Eighth, and Fourteenth Amendments. Dkt. 1. He also asserts one

claim for failure to provide reasonable accommodations under the Americans with Disabilities

Act. *Id.* Defendants' motion for summary judgment (Dkt. 22) moves for dismissal of all of

Smithson's claims with prejudice. Dkt. 22 at 2. For the following reasons, the motion is granted in part and denied in part.

## I.     BACKGROUND

In 2017, Smithson was convicted in Pierce County Superior Court of "second-degree assault and unlawful possession of a controlled substance." Dkt. 23 ¶ 4. After his release from prison in July 2018, Smithson's sentence required him to serve eighteen months of community custody with the Washington State Department of Corrections ("DOC") and report to Community Corrections Officer ("CCO") Jonathan Hammond, one of the defendants in this case. Dkt. 23-1 at 7. After his release from prison, Smithson agreed to certain conditions of community custody imposed by DOC, including that he would not "threaten or exhibit assaultive behavior toward any Department employee." Dkt. 23-3 at 2.

Smithson's claims revolve around an altercation and arrest on January 22, 2019, involving Hammond and several other Community Corrections Officers that occurred while Smithson was in the bathroom of a DOC field office to provide a urinalysis sample for drug testing ("UA"). Dkt. 1 at 4; Dkt. 22 at 4. During the incident, Smithson broke bones in his right hand. Dkt. 26 at 4; Dkt. 22 at 5. The parties dispute the events that resulted in his injuries.

In a sworn declaration, Smithson alleges that, after he reached towards Hammond to receive a UA cup, Hammond "suddenly seized both [his] shoulders, . . . [and] pushed [Smithson] against the wall next to the toilet." Dkt. 27 ¶ 14. Then, according to Smithson, Hammond punched him in the face and ordered him to get on the ground and put his hands behind his back. *Id.* ¶ 15. Smithson asserts he complied with Hammond's orders. *Id.* Once Smithson was on the ground, Hammond began trying to handcuff him, at which point Hammond "gripped two fingers on [Smithson's] right hand with one of his hands and the other two fingers on [Smithson's] right hand with his other hand, forcibly spreading them until a bone snapped." *Id.* Smithson alleges he

1
2
3

did not "attempt to retaliate nor do anything to provoke" Hammond. *Id.* Smithson argues in opposing summary judgment that, based on his account, he "posed no threat" during the incident. Dkt. 26 at 10 (citing Dkt. 27 ¶ 12).

4
5
6
7
8
9
10

Defendants' account differs significantly. Defendant Hammond alleges that, after walking into the bathroom, Smithson "forcibly bumped into [him] with his elbow to [his] midsection and then turned toward [him] in an aggressive manor [sic] as if [Smithson] was getting ready to attack [him]." Dkt. 23-6 at 3. Hammond extended his left arm to move Smithson back and told him to get against the wall. *Id.* Smithson then "lunged at [Hammond] with his hands grabbing the front of [Hammond's] vest." In his "Report of Alleged Violation" regarding the incident, Hammond continues:

11
12
13
14
15
16

> I pushed Smithson back against the wall in an effort to restrain him and also give directives to get on the ground. As I was trying to restrain Smithson, he was swinging his arms trying to hit me in the face and head. I started to block Smithson's swings with my forearms. Smithson was in the corner of the bathroom refusing directives to get on the ground. At this point, CCO Mowatt and CCO Lewis (who were standing by) heard the commotion and came into the bathroom. Smithson was standing in the corner as CCO Mowatt grabbed him by his left arm and at the same time giving verbal directives to get on the ground. I grabbed him by his right arm and assisted CCO Mowatt in placing Mr. Smithson on the ground. Smithson continued to resist by tensing his arms while CCO Mowatt and I applied wrist restraints. CCO Lewis applied restraints to his right wrist as CCO Mowatt and I had to maintain control of his arms due to his continued resistance.

17
18
19
20
21
22
23
24

*Id.* Following Smithson's arrest, he "was charged with violations of his community custody conditions" for his "assaultive behavior" during the incident. Dkt. 22 at 5 (citing Dkt. 23-6). DOC, which has authority to adjudicate violations of "condition[s] or requirement[s] of community custody," RCW 9.94A.737(4), held an administrative hearing regarding the charge on January 31, 2019. Dkt. 23-7. The DOC hearing officer issued a written decision, submitted into evidence by Defendants, which found Smithson guilty of "assaultive behavior" and sanctioned him to thirty days in prison. *Id.* at 3. A section of the decision entitled "Summary of

Facts Presented/Reasons for Findings" appears to describe part of the incident that was the subject of the sanction: "1-24-19 – escort UA bathroom. Bumped in to [sic] him restroom – grabbed CCO. Needed assistance, CCO Hammond . . . ." *Id.*[1] The decision form indicates the hearing officer relied on the following evidence in making his decision: Smithson's state court judgment and sentence, his "Notice of Allegation, Hearing, Rights and Waiver form,"[2] Defendant Hammond's written report of the incident, and a form setting out the conditions of Smithson's community custody sentence. *Id.* at 2.

## II.   DISCUSSION

### A.   Collateral Estoppel

Generally, "in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Defendant argues that the Court must give preclusive effect to the DOC hearing officer's decision and treat certain facts he allegedly found to be true as established in this case. Specifically, in regard to Smithson's excessive force claims, Defendants argue that Smithson is estopped from asserting facts inconsistent with the hearing officer's determination that he "engaged in assaultive behavior towards CCO Hammond" (Dkt. 22 at 9) and that Smithson engaged in this behavior "during the incident in which his hand was broken," *Id.* at 10. They also argue that Smithson is estopped from alleging there was no probable cause for his

---

[1] The hearing officer's decision is handwritten, and some parts of his writing are difficult to understand.

[2] The DOC must notify community custody "offenders" of an "alleged violation and the evidence supporting it" prior to a hearing on community custody violations. RCW 9.94A.737(6)(a). The notice must also include "a statement of the rights specified in this subsection, and the offender's right to file a personal restraint petition under court rules after the final decision." *Id. See* RCW 9.94A.737(6)(a).

arrest during the UA incident because his "conviction" for assaultive behavior establishes that Defendants had "reasonable suspicion" to arrest him under Washington law. *Id.* at 19. Smithson responds that Defendants have not met the standard for showing that collateral estoppel should apply. Dkt. 26 at 8.

###### 1.  Collateral Estoppel Standard

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). "The doctrine of collateral estoppel, or issue preclusion, is grounded on the premise that once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed." *Wabakken v. Cal. Dep't of Corr. & Rehab.*, 801 F.3d 1143, 1148 (9th Cir. 2015) (internal quotations omitted).

Federal courts give preclusive effect to state agency fact finding when the agency acted in a "judicial capacity" and the parties had an "adequate opportunity to litigate" the issues decided. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (internal quotations omitted). Moreover, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* Accordingly, the Court will apply Washington law in analyzing the collateral estoppel issues in this case. *See Davis v. Clark Cnty., Wash.*, 966 F.Supp.2d 1106, 1124 (W.D. Wash. 2013).

"The burden of proof as to the propriety of applying the doctrine of collateral estoppel is on the party seeking its application," and Washington courts "view all facts and inferences in the light most favorable to the opposing party" in making this determination. *Reninger v. Dep't of Corr.*, 901 P.2d 325, 332 (Wash. Ct. App. 1995), *aff'd on other grounds*, 951 P.2d 782 (Wash. 1998). "[C]ollateral estoppel extends only to 'ultimate facts', *i.e.*, those facts directly at issue in

the first controversy upon which the claim rests, and not to 'evidentiary facts' which are merely collateral to the original claim." *McDaniels v. Carlson,* 738 P.2d 254, 258 (Wash. 1987).

Washington courts consider seven factors in determining whether to give preclusive effect to agency fact finding, four of which apply to every case and three of which only apply when the movant seeks collateral estoppel effect for agency findings. *Christensen v. Grant Cnty. Hosp. Dist. No. 1,* 96 P.3d 957, 961–62 (Wash. 2004) (en banc). Under the traditional four-factor test, the party seeking application of the doctrine must show that:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Id.* at 961. The party seeking the application of issue preclusion must prove each factor of the traditional test; "therefore, if any one element fails the doctrine does not apply." *George v. Farmers Ins. Co. of Wash.,* 23 P.3d 552, 559 (Wash. Ct. App. 2001) (citing *Southcenter Joint Venture v. Nat'l Dem. Party Comm.,* 780 P.2d 1282, 1284–85 (Wash. 1989) (en banc)). For agency findings, Washington courts also consider: "(1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations." *Christensen,* 96 P.3d at 961–62 (citations omitted).

At least one Washington court has treated DOC disciplinary hearings as "administrative" proceedings and applied the agency-specific factors in ruling on issue preclusion. *See Matter of Wilson,* 484 P.3d 1, 8–9 (Wash. Ct. App. 2021); *see also Mock v. State,* 403 P.3d 102, 104 (Wash. Ct. App. 2017) ("Under applicable statutes, sanctions for community custody violations are imposed by the department in an *administrative* process, not by the court." (emphasis added)); RCW 9.94A.737(4), (6) (statute setting out rules regarding DOC hearings for

community custody violations). *Wilson*'s holding on collateral estoppel, however, is not applicable to this case. There, the Washington Court of Appeals considered the collateral estoppel effect of a DOC disciplinary hearing in a subsequent DOC hearing of the same kind. *See* 484 P.3d at 8. Relevant here, the court held that the injustice prong of the collateral estoppel test was met because "[i]njustice is a nonissue when the first and second forum, and the relief available, were the same." *Id.* The Court has not discovered any Washington case giving preclusive effect to a DOC administrative hearing in a later civil action.

Defendants argue that all seven factors of the collateral estoppel test are met. Dkt. 22 at 9–11. Plaintiff disputes that the first, second, and fourth factors of the traditional test are met but does not address the third traditional factor or the three agency-specific factors. *See* Dkt. 26 at 8–9. Because the Court finds that the "identical issues" and "injustice" factors are dispositive of this case, it will limit its analysis to those issues.

    *a.  Identical Issues*

Under Washington law, the first factor is not met if "there is ambiguity or indefiniteness in a verdict or judgment" for which the moving party seeks collateral estoppel effect. *Mead v. Park Place Props.*, 681 P.2d 256, 259 (Wash. Ct. App. 1984), *review denied*, 102 Wash.2d 1010 (1984). "If there is uncertainty whether a matter was previously litigated, collateral estoppel is inappropriate." *Id.*; *see also Crowley Marine Servs., Inc. v. Hunt*, No. C 93–1334C, 1995 WL 694094, at *4 (W.D. Wash. July 21, 1995) (applying Washington law and declining to grant collateral estoppel effect to a state court judgment where the court's written decision was a "form order" signed by the judge that was "devoid of factual findings, analysis, and conclusions of law").

As to Smithson's excessive force claims, Defendants seek collateral estoppel for the DOC hearing officer's findings that Plaintiff "engaged in assaultive behavior towards CCO

Hammond," Dkt. 22 at 9, and that Plaintiff engaged in this behavior "during the incident in which his hand was broken." *Id.* at 10. The DOC hearing officer's decision is too vague to show that the issues he decided are identical to the issues relevant here. First, while the hearing officer found Smithson guilty of "assaultive behavior," there is no definition of that term in the decision, the statute concerning community custody violations, or anywhere in the record. *See* Dkt. 23-7; RCW 9.94A.737. Defendants' counsel conceded at oral argument that the term "assaultive behavior" appears to have no clear legal definition; rather, the term is taken from the community custody conditions form stipulated to by Smithson when he began supervision, which prohibited him from "threaten[ing] or exhibit[ing] *assaultive behavior* toward any Department employee." Dkt. 23-3 at 2 (emphasis added).

Furthermore, it is unclear whether the hearing officer's handwritten notes in the section of his decision titled "Summary of Facts Presented/Reasons for Findings" are factual findings. Dkt. 23-7 at 3. The section's title and contents suggest it may simply be a memorialization of the facts *presented* by the parties, as opposed to facts the hearing officer found to be true. Moreover, even if they were findings of fact, they do not clearly identify what role each party played in the altercation. *See id.* ("Bumped in to [sic] him restroom – grabbed CCO. Needed assistance, CCO Hammond . . . .").[3] This ambiguity makes it impossible to determine what actual facts Smithson would be estopped from litigating now. Accordingly, the Court finds that the DOC hearing officer's decision has no collateral estoppel effect on Smithson's excessive force claim because it

---

[3] Plaintiff argues that collateral estoppel is also inappropriate because the hearing officer decision states that the date of the UA incident was January 24, 2019, as opposed to January 22, 2019, the date on which the parties agree the incident took place. Dkt. 26 at 8–9; *see* Dkt. 22 at 7; Dkt. 26 at 3. Defendants respond that this was a clerical error, which itself was based on an error that Hammond made in his report of the incident. Dkt. 33 at 2 (citing Dkt. 23 ¶ 14). Plaintiff also contends that the notice he received for the hearing only informed him that it was for "a failure to complete a UA." *See* Dkt. 26 at 6. While the Court acknowledges both arguments, it need not reach these issues in ruling on collateral estoppel.

1    is at best uncertain that the issues decided in the DOC hearing are identical to any element of the

2    excessive force claim.

3    There does, however, appear to be identity of issues as to Smithson's wrongful arrest

4    claim, because a conviction "is conclusive evidence of probable cause" under Washington law

5    and the hearing officer found Plaintiff guilty of "assaultive behavior." *Hanson v. City of*

6    *Snohomish*, 852 P.2d 295, 299 (Wash. 1993) (en banc). But the Court also finds that the

7    differences in procedures between the DOC hearing and the instant lawsuit are too great for the

8    decision to be given preclusive effect as a general matter.

9    The "injustice" factor of the traditional collateral estoppel test "is generally concerned

10    with procedural, not substantive irregularity." *Christensen*, 96 P.3d at 962. "This is consistent

11    with the requirement that the party against whom the doctrine is asserted must have had a full

12    and fair opportunity to litigate the issue in the first forum." *Id.* The Washington Supreme Court

13    has recognized several considerations relevant to this inquiry. Relevant here, it has held the

14    injustice factor is met if the party against whom estoppel is asserted had "sufficient motivation

15    for a full and vigorous litigation of the issue in a prior proceeding," *Weaver v. City of Everett*,

16    450 P.3d 177, 182 (Wash. 2019), and where the procedures in the prior proceeding are adequate

17    compared to those in the later case. *See Reninger v. State Dep't of Corr.*, 951 P.2d 782, 789

18    (Wash. 1998) (granting preclusive effect to administrative decision, in part, because "[v]ery little

19    of significance distinguished the administrative proceedings in this case from a formal jury trial

20    in superior court"); *cf. Christensen*, 96 P.3d at 962 ("[A]pplying collateral estoppel may be

21    improper where the issue is first determined after an informal, expedited hearing with relaxed

22    evidentiary standards." (citing *Vasquez*, 59 P.3d at 653)). For the following reasons, the Court

23    finds that collateral estoppel is not warranted because Smithson did not have an adequate

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9

incentive to litigate his community custody charge and his DOC hearing was too swift and informal.

First, Defendants argue that "Plaintiff had every incentive to litigate the issue in his favor in the earlier proceeding, because the adverse outcome resulted in his having to serve 30 days in jail rather than in the community." Dkt. 22 at 10. They compare Smithson's DOC hearing to a criminal trial and his sanction to a criminal conviction. *See id.* The Court disagrees with both arguments. DOC charged Smithson with a "high level violation" of his community custody conditions (Dkt. 23-6 at 2) which carries a maximum sentence of thirty days "confinement." RCW 9.94A.737(4). In comparison, the lowest statutory maximum for assault on a law enforcement officer in Washington—Assault in the Third Degree, RCW 9A.36.031, a class C felony—is five years. RCW 9A.20.021(1)(c). Given this discrepancy, the Court disagrees that Smithson's incentive to litigate was the same as in a comparable criminal case. Rather, the Court concludes that the low maximum penalty for the community custody charge was insufficient to give Smithson an adequate incentive to fully litigate it. This consideration weighs against granting Defendants' request for collateral estoppel.

Second, the Court concludes that the DOC hearing was the type of "informal, expedited hearing with relaxed evidentiary standards" that is not entitled to collateral estoppel effect under Washington law. *Christensen*, 96 P.3d at 962 (citing *Vasquez*, 59 P.3d at 653). The *Vasquez* court's reasoning on this issue is instructive:

> We do not have a complete record of the administrative hearing, the only evidence of the hearing being the order of dismissal. However, it is apparent that the hearing was conducted with little formality. The order states that the hearing was conducted telephonically between Vasquez, his attorney, and the hearing officer. The State submitted two exhibits: (1) a copy of the report of breath/blood test for alcohol; and (2) the officer's report and accompanying documents. No witnesses, not even Sergeant Jones, appeared to testify. The hearing officer made his decision based solely on the two exhibits that were submitted by the State. . . . [T]here was neither testimony nor opportunity for direct cross-examination in the administrative

hearing. The hearing officer adjudicated the issue of probable cause on limited evidence. In Vasquez's criminal prosecution, the issue of probable cause was litigated exhaustively.

*Vasquez*, 59 P.3d at 654 (citations omitted). *Vasquez* also noted that the administrative proceeding at issue was distinguishable from another where the court had granted preclusive effect when the earlier proceeding was governed by the Administrative Procedure Act ("APA") and defendant was represented by counsel, called witnesses, and obtained discovery prior to the hearing. *Id.* at 652 n.9 (citing *Reninger v. Dep't of Corr.,* 951 P.2d 782 (1998)). Here, much like in *Vasquez*, the DOC hearing was not governed by the APA, *see* RCW 9.94A.737(1), the hearing officer relied only on four documents, Dkt. 23-7 at 2, and his decision indicates there was no testimony from witnesses. *See id.* (boxes for "CCO testimony" and "Offender testimony" under "Evidence Relied Upon" are not checked off). Moreover, unlike a criminal case, Smithson did not have the right to an attorney, WAC 137-104-060, or a jury, and the hearing officer was allowed to consider hearsay, WAC 137-104-050(g). Notice of a pending hearing for a community custody violation may be delivered to the "offender" no less than 24 hours before the hearing takes place and the hearing itself occurs between one and fifteen days after receipt of the notice. RCW 9.94A.737(6)(b). Thus, Smithson's DOC proceeding was the type of "informal, expedited hearing with relaxed evidentiary standards" that should not be given preclusive effect in subsequent litigation. *Christensen*, 96 P.3d at 962 (citing *Vasquez*, 59 P.3d at 653).

Accordingly, the Court declines to grant collateral estoppel effect to the DOC hearing officer's decision. Because a movant's failure to prove each factor of the traditional collateral estoppel test is dispositive, the Court will not address the three agency-specific factors. *George*, 23 P.3d at 559.

1

2

**B.      Summary Judgment**

*1.      Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The evidence relied upon by the nonmoving party must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Ev. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presume[d]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). However, as stated, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). Consequently, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that,

where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan,* 497 U.S. at 888 (internal quotations omitted).

### 2. Excessive Force Claims

Smithson's complaint alleges two claims for excessive force under Section 1983. The first alleges excessive force in violation of the Fourth Amendment against Defendant Hammond in his individual capacity for allegedly causing Smithson's injury during the UA incident. Dkt. 1 at 10–12. The second alleges excessive force in violation of the Eighth and Fourteenth Amendments against Defendants Hammond and Amber Smith in their individual capacities for their conduct during the UA incident. *Id.* at 12–14. The Court considers each claim in turn.

### a. Constitutional Framework

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. . . . The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right . . . ." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Determination of the correct constitutional standard depends on the plaintiff's custodial status when the alleged excessive force occurred:

> The Fourth Amendment's objective reasonableness standard governs a free citizen's claim that law enforcement officials used excessive force, in any search or seizure, while the Fourteenth Amendment's objective reasonableness standard protects pretrial detainees. After conviction, the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners.

*Hughes v. Rodriguez*, 31 F.4th 1211, 1220 (9th Cir. 2022) (internal citations and quotation marks omitted).

Washington regulations define community custody as "that portion of an offender's sentence of confinement in lieu of earned release time or imposed as part of a sentence under this

chapter and served in the community subject to controls placed on the offender's movement and activities by [DOC]." RCW 9.94A.030. An individual on community custody "is the functional equivalent of a parolee." *Nash v. Robinson*, 2010 WL 4852199, at *8 (W.D. Wash. Nov. 1, 2010), *report and recommendation adopted*, 2010 WL 4918957 (Nov. 26, 2010), *aff'd*, 471 F. App'x 643 (9th Cir. 2012). This case raises the question of which constitutional standard applies to a person in community custody alleging excessive force during an arrest for a violation of their conditions of supervision. While neither the Ninth Circuit nor the U.S. Supreme Court has addressed this question directly, the weight of authority favors application of the Fourth Amendment.

In *Ellis v. City of San Diego*, the Ninth Circuit applied the Fourth Amendment to an excessive force claim where the plaintiff was on parole at the time of the alleged excessive force. 176 F.3d 1183, 1191–92 (9th Cir. 1999), *as amended on denial of reh'g* (June 23, 1999). The court rejected a defendant's argument that the plaintiff's status as a parolee at the time of the incident meant that his claim should be governed by the Eighth Amendment: "Ellis's suit challenges not the conditions of confinement but the conditions of *arrest.* Van Hoesen cites no authority for her contention that parolees complaining of excessive force or warrantless arrests are actually complaining of the conditions of their 'confinement' on parole, and, understandably, there is none." *Id.* at 1189 n.4. Thus, while the plaintiff in *Ellis* was not arrested for a parole violation, the decision does clarify that an individual out on parole is generally not in "confinement" for Eighth Amendment purposes and that the Fourth Amendment generally applies to excessive force claims involving arrests of parolees. This distinction is consistent with the Washington Supreme Court's characterization of individuals serving the community custody portions of their sentence. *In re Blackburn*, 232 P.3d 1091, 1093 (Wash. 2010) ("A person in community custody 'can be gainfully employed and is free to be with family and friends and to

form the other enduring attachments of normal life.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Consistent with *Ellis*, other Ninth Circuit decisions have applied the Eighth Amendment when the plaintiff was a prisoner at the time of the alleged excessive force. *See Hughes*, 31 F.4th at 1220 ("After conviction, 'the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain *in penal institutions*, serves as the primary source of substantive protection to convicted *prisoners*.'" (emphasis added) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Defendants point to a seemingly broader statement in *Hughes* that "the Eighth Amendment applies equally to convicted prisoners inside or outside the walls of the penal institution." 31 F.4th at 1221. However, *Hughes* only considered what constitutional standard applies to an escaped prisoner. *See id.* at 1220 ("But these questions, in turn, put first the question of *which* constitutional right, protects escaped prisoners from excessive force."). Unlike *Ellis*, *Hughes* did not address the standard that should apply when the plaintiff is a parolee. Accordingly, the guidance in *Ellis* regarding the distinction between parolees and prisoners is more applicable here.

Moreover, other district courts have determined that the Fourth Amendment, and not the Eighth, applies to a parolee's claim that they were subjected to excessive force during an arrest for a parole violation. The U.S. District Court for the Southern District of New York in *Cox v. Fischer* reasoned:

> [W]hen officers use force against a parolee they suspect of violating the conditions of his parole, they are effecting a "seizure" of the parolee for committing a new offense, not a "punishment" for committing the crime for which he was convicted. Indeed, the Division of Parole records submitted in this case state that Cox was attempting "to avoid his lawful *arrest*" for parole violations at the time of the incident. And when the parolee is seized, his right to be free from excessive force derives from the same source as that of other members of the public—the Fourth Amendment.

248 F. Supp. 3d 471, 479 (2017) (citations omitted) (quoting U.S. Const. amends IV, VIII).

For these reasons, the District Court decisions cited by Defendants in support of their contention that the Eighth Amendment applies generally to parolees are inapposite. All deal with alleged excessive force that occurred while the plaintiffs were already in *confinement* after being arrested for other parole violations, whereas the excessive force alleged by Smithson happened outside of prison while he was being arrested. *See Weitzel v. Cnty. of L.A.*, No. CV 15-9328 PSG, 2018 WL 5907442, at *1, *4 (C.D. Ca. Mar. 14, 2018) (applying the Eighth Amendment to a plaintiff who was detained for a parole violation when the alleged excessive force occurred); *Leialoha v. MacDonald*, No. 07–00218 ACK–KSC, 2008 WL 2736020, at *2 (D. Haw. July 11, 2008) (alleged excessive force occurred while plaintiff was being transported to prison after being arrested for and arraigned on parole violations); *Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding that detained parolees may bring constitutional challenges to their conditions of confinement under the Eighth Amendment).

Accordingly, because Smithson was out on community custody when he was arrested for violations of his community custody sentence (Dkt. 23-6 at 3; Dkt. 23-3 at 2), his excessive force claims are governed by the Fourth Amendment.

b.   Fourth Amendment Claim

Hammond argues that he is entitled to qualified immunity for Plaintiff's Fourth Amendment excessive force claim. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts follow a "two-step sequence" to analyze qualified immunity defenses:

1

2

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

3

4

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). Which step to

5

analyze first is an exercise of discretion "in light of the circumstances in the particular case at

6

hand." *Id.* at 236.

7

Here, the Court first addresses whether Smithson's facts make out a violation of the

8

Fourth Amendment. Excessive force claims alleging violations of the Fourth Amendment are

9

analyzed under the "objective reasonableness" standard. *Graham*, 490 U.S. at 388. In making

10

this inquiry, courts first consider the "nature and quality of the alleged intrusion." *Mattos v.*

11

*Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). Next, courts apply the *Graham* factors "by looking

12

at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the

13

safety of the officers or others, and (3) whether the suspect was actively resisting arrest or

14

attempting to evade arrest by flight." *Id.* The second factor is the most important of the three. *Id.*

15

(quoting *Smith v. City of Hemet,* 394 F.3d 689, 702 (9th Cir. 2005) (en banc)). As described

16

previously, Smithson states in his declaration that he did not commit any crime prior to the

17

arrest, complied with Hammond's instructions, did not "provoke" him, and did not "retaliate"

18

against the officers. Dkt. 27 ¶¶ 14–15. Defendants do not make any argument that Smithson fails

19

to make out a violation of a constitutional right under his version of events.

20

First, punching is as an "intermediate level[] of force that significantly intrude[s] on

21

Fourth Amendment rights." *Steinmeier v. Cnty. of San Diego*, No. 18cv1603 JM, 2020 WL

22

377052, at *6 (S.D. Cal. Jan. 23, 2020) (citing *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1161–62

23

(9th Cir. 2011)). Given the absence of any reason for the arrest, Smithson's lack of retaliation,

24

and his compliance with instructions, a reasonable juror could find that Smithson has established

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17

each of the *Graham* factors. Accordingly, a reasonable juror could find that Hammond violated Smithson's Fourth Amendment rights under Smithson's version of events.

Next, the Court turns to whether Smithson's right to be free from excessive force was clearly established. While "[t]he right to be free from excessive force [under the Fourth Amendment] is a clearly established right," *Saucier v. Katz*, 533 U.S. 194, 202 (2001), the inquiry is case-specific, requiring the Court to determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* The inquiry is also time-specific, requiring the Court to ask whether the right was clearly established when the incident occurred. *See Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002). It is the plaintiff's burden to show that the right was clearly established. *Id.* at 969.

The Court begins by looking to binding precedent. *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004). While courts do "not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mattos*, 661 F.3d at 442 (quotations omitted). Generally, the Court "must 'identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

Smithson cites *Palmer v. Sanderson*, 9 F.3d 1433, 1434–36 (9th Cir. 1993) and *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir.1989) as cases that established the unreasonableness of Hammond's conduct during the UA incident. Dkt. 26 at 10 n.1. In *Palmer*, the Ninth Circuit concluded that the defendant police officers were not entitled to qualified immunity for fastening "handcuffs so tightly around [the plaintiff's] wrist that they caused Palmer pain and left bruises that lasted for several weeks." 9 F.3d at 1436. The officer who placed the handcuffs on the plaintiff "presented no evidence that would justify handcuffing Palmer so tightly that he suffered

pain and bruises, or to justify his refusal to loosen the handcuffs after Palmer complained of the pain." *Id.* In *Hansen*, the Ninth Circuit overturned the district court's decision granting summary judgment on an excessive force claim under the Fourth Amendment where the evidence showed that the defendant police officer was "rough and abusive to [the plaintiff's] person" while handcuffing her and that the plaintiff sustained bruising to her wrist and upper arm because of the arrest. 885 F.2d at 645. Moreover, in *Blankenhorn v. City of Orange*, the Ninth Circuit found that summary judgment was not appropriate on a Fourth Amendment excessive force claim where the plaintiff's evidence suggested that officers needlessly punched him during the arrest. 485 F.3d 463, 480 (9th Cir. 2007).

Here, Smithson alleges that Hammond violated his Fourth Amendment rights by punching him in the face and breaking bones in his hand and wrist while handcuffing him. Dkt. 1 ¶ 24. In his declaration, Smithson asserts that, after reaching towards Hammond for a UA cup, Hammond "seized" his shoulders, turned him around, and pushed him up against the wall. Dkt. 27 ¶ 14. Then, Smithson alleges that Hammond punched him in the face before ordering him to get on the ground and put his hands behind his back. *Id.* ¶ 15. Smithson alleges that he complied without "retaliating" or "provoking" Hammond. *Id.* Then, while Hammond was handcuffing Smithson, "he gripped two fingers on [Smithson's] right hand with one of his hands and the other two fingers on [Smithson's] right hand with his other hand, forcibly spreading them until a bone snapped." *Id.*

Defendants argue that the constitutional framework to be applied to the excessive force claim in the first instance is not clearly established. Dkt. 22 at 12–15. However, the Court has already concluded that the Fourth Amendment applies to this claim under binding and persuasive

precedent.[4] Defendants do argue in the alternative that the unconstitutionality of Hammond's conduct was not clearly established under the Fourth Amendment, but only assuming the Court would grant collateral estoppel effect to the DOC hearing officer's purported determination that Smithson attacked Hammond and resisted his arrest. Dkt. 22 at 16. Defendants do not make any argument in the alternative as to the "clearly established" issue based on Smithson's contrary version of the facts, which the Court must assume to be true since it is not granting collateral estoppel effect to the DOC hearing officer decision. *See Tolan*, 572 U.S. at 651; *Blankenhorn*, 485 F.3d at 477 ("Where [factual] disputes exist, summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party.")

The Court finds that *Palmer*, *Hansen*, and *Blankenhorn* are sufficiently similar to the facts of this case to clearly establish Smithson's right to be free from Hammond's excessive force. Under Smithson's version of events, Hammond punched him in the face and used unreasonable force to injure his hand while handcuffing him, all with no apparent justification. The above-cited cases show that the law was "clearly established" at the time of the UA incident and gave Hammond "sufficiently fair notice that his conduct could have been unconstitutional." *Id.* at 481. Accordingly, Smithson has met each prong of the qualified immunity inquiry, and the Court will not grant summary judgment for his Fourth Amendment excessive force claim.

c.  Fourteenth and Eighth Amendment Claim

Smithson also brings an excessive force claim against Defendants Hammond and Smith that alleges violations of the Eighth and Fourteenth Amendments. Dkt. 1 at 12. However, summary judgment must be granted for excessive force claims alleging violations of the wrong

---

[4] While the Court has doubts as to whether the determination of which constitutional standard applies to the excessive force claim is subject to the "clearly established" inquiry, it need not decide this issue since the Fourth Amendment's application to Plaintiff's claim is clearly established.

constitutional standards. *See Glair v. City of Santa Monica*, 649 F. App'x 411, 412 (9th Cir. 2016) (upholding district court's grant of summary judgment for excessive force claim brought under the wrong constitutional framework). Accordingly, the Court will grant summary judgment to Defendants for Smithson's second excessive force claim.

### 3. Wrongful Arrest

Defendants also move for summary judgment on Smithson's claim for wrongful arrest under the Fourth, Fifth, Eighth, and Fourteenth Amendments. Dkt. 1 at 14. As a preliminary matter, the Court notes that the claim is only cognizable under the Fourth Amendment's "reasonableness" standard. *Brew v. City of Emeryville*, 138 F. Supp. 2d 1217, 1223 (N.D. Cal. 2001) (citing *Larson v. Neimi,* 9 F.3d 1397, 1400 (9th Cir.1993)).

Each side makes concessions in their briefing that dispose of this claim. First, Defendants do not make any argument that summary judgment is appropriate as to Defendant Hammond if the Court does not grant collateral estoppel effect to the DOC hearing officer's decision. *See* Dkt. 22 at 19–20. Accordingly, the Court will not grant summary judgment on this claim as to Hammond.

In addition, Smithson does not meaningfully respond to Defendants' argument that summary judgment is appropriate as to Defendants Lewis, Smith, or Hendricks on this claim. *See* Dkt. 26 at 20–21. According to Smithson's version of events, Defendant Lewis entered the room where he was arrested after Hammond had already handcuffed him. Dkt. 27 ¶ 16.[5] There is no

---

[5] Smithson also states that "a woman with black hair . . . finished handcuffing" him but does not specifically identify her. Dkt. 27 ¶ 15. Hammond's incident report, which he incorporates into his declaration, *see* Dkt. 23 ¶ 14, states that Lewis applied wrist restraints to Plaintiff's right wrist. Dkt. 23-6 at 3. However, Smithson's declaration suggests that Lewis was not the person who helped handcuff him. Dkt. 27 ¶ 16 ("I started screaming, so loud that a bunch of people rushed in, including a woman with black hair who finished handcuffing me. There were about 4-6 officers that came in after I screamed. Eventually, I saw Sarah Lewis again and she told me they were taking me to the emergency room at St. Joseph's hospital.").

evidence in the record that Defendants Smith or Hendricks had any involvement in the arrest. Defendants argue that Lewis and Smith only would have known about the arrest from Hammond, and that they were allowed to reasonably rely on his representations regarding probable cause under *Harper v. City of L.A.*, 533 F.3d 1010, 1022 (9th Cir. 2008). Dkt. 22 at 19. Smithson's only argument as to Lewis, Smith, and Hendricks' involvement is his general statement, without citation to the record, that they participated in the wrongful arrest. Dkt. 26 at 20. "Where a nonmoving party fails to specifically identify and cite evidence raising a genuine issue of triable fact in its response to the motion, the Court may properly enter summary judgment against it." *Spirit Master Funding VIII, LLC v. Kelly Rest. Grp., LLC*, No. CV-18-01012-PHX-JJT, 2020 WL 805964, at *9 (D. Ariz. Feb. 18, 2020) (citing *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001)). Plaintiff has not pointed to any facts in the record establishing Defendants' Lewis, Smith, or Hendricks' liability for wrongful arrest. Accordingly, the Court will grant summary judgment for Defendants Lewis, Smith, and Hendricks on this claim.

     *4. Unconstitutional Policy, Practice, or Custom*

     Defendants argue that summary judgment is proper for Smithson's claim of unconstitutional policy, practice, or custom, which was originally alleged against Defendant Alex McBain and John Does 1–5 in Plaintiff's complaint. Dkt. 1 at 16.

     The Court begins by acknowledging that this claim appears to be a *Monell* claim, which is a lawsuit "for constitutional torts committed by" municipal or other local government "officials according to an official policy, practice, or custom." *Emery v. Pierce County*, 2010 U.S. Dist. LEXIS 33212, at *17 (W.D. Wash. Apr. 15, 2010) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). However, *Monell* claims are only cognizable against

municipalities or local governments, not state entities or officials. *See id.* Summary judgment is appropriate for this reason.

Moreover, Smithson's response alleges, for the first time, that he is bringing this claim against Defendants Hendricks and Smith. Dkt. 26 at 22. His complaint names only McBain and "John Does 1–5 Washington State Department of Corrections Supervisory Policy Makers" as Defendants to this claim. Dkt. 1 at 16. A plaintiff "cannot raise new allegations in a response to a motion for summary judgment." *Davis v. Wash. State Dep't of Corr.*, 2017 U.S. Dist. LEXIS 180456, at *7 n.5 (W.D. Wash. July 25, 2017) (citing *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 965 (9th Cir. 2006)). Accordingly, summary judgment is appropriate for Defendants Hendricks and Smith.

Furthermore, Smithson brings this claim against McBain in his official and individual capacities. However, "state officials acting in their official capacities cannot be sued for damages under Section 1983." *Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013). Plaintiff only specifically requests damages for this claim. Dkt. 1 at 18. Summary judgment is appropriate for the official capacity claim against McBain.

Finally, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). McBain was the Director of Executive Policy for DOC at the time the UA incident occurred. Dkt. 24-3 ¶ 2. He states in a declaration that his responsibilities "were focused on public policy as it related to legislation that affected the agency" and that he "did not have the authority or responsibility to implement internal DOC policies or procedures, such as those governing the employment of corrections officers or establishing how officers should conduct themselves when interacting with individuals on community custody." *Id.* ¶ 5. Smithson's response does not point to any evidence to support his allegations of McBain's conduct in the complaint or to dispute McBain's

contention that he did not have the responsibilities alleged. *See* Dkt. 26 at 22–24. Accordingly, Smithson has not shown a genuine dispute of material fact and summary judgment will be granted as to McBain in his individual capacity.

     5.  *Americans with Disabilities Act Claim*

     Defendants also argue that summary judgment is warranted for Smithson's Americans with Disabilities Act ("ADA") claim, which he asserts against Defendants Lewis, Smith, Hendricks, McBain, and John Does 1–5.

     First, Smithson does not state in his complaint whether he is bringing this claim against the named Defendants in their individual or official capacities. "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity" under Title II of the ADA. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Accordingly, to the extent that Smithson asserts claims against Defendants in their individual capacities, those claims must be dismissed.

> To state a claim under Title II of the ADA, a plaintiff generally must show: (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability.

*Sheehan v. City and Cnty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom. City & Cnty. of S.F., Cal. v. Sheehan*, 575 U.S. 600 (2015)). The Ninth Circuit has recognized two types of Title II claims relating to arrests:

> (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

*Id.* "A public entity may be liable for damages under Title II of the ADA . . . if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017) (internal quotation marks and citation omitted).

Smithson asserts a reasonable accommodation claim for damages. *See* Dkt. 1 at 19–20. Defendants argue that Smithson has not produced any evidence of deliberate indifference, let alone intentional discrimination. In response, Smithson does not address the issue and points to no evidence in the record establishing deliberate indifference. Accordingly, summary judgment is appropriate for this claim. *See Spirit Master Funding*, 2020 WL 805964, at *9.

6. *Wage Loss/Loss of Earning Capacity*

Smithson's complaint states that "[t]he Defendants' acts and failure to act impaired Plaintiff Smithson's ability to earn wages. As a direct result Plaintiff Smithson anticipates future lost wages caused by the Defendants." Dkt. 1 at 9. Defendants seek summary judgment on this element of damages on the basis that Smithson has produced no evidence of wage loss and testified that he has not been able to work since long before the UA incident. Smithson does not address this claim or point to any evidence to support it in his response. The Court will therefore grant summary judgment as to any wage loss or loss of earning capacity claim. *See Spirit Master Funding*, 2020 WL 805964, at *9.

### III.   CONCLUSION

Therefore, it is hereby ORDERED that:

- Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's Fourth Amendment Excessive Force Claim against Defendant Hammond and his Fourth Amendment Wrongful Arrest Claim against Defendant Hammond.

- Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's Eighth and Fourteenth Amendment Excessive Force Claim; his Wrongful Arrest Claim against Defendants Lewis, Smith, and Hendricks; his Unconstitutional Policy, Practice, or Custom Claim; his Americans with Disabilities Act Claim; and his Wage Loss/Loss of Earning Capacity Claim.

- Defendants Sarah Lewis, Amber Smith, Richard Hendricks, Alex McBain, and all John/Jane Doe Defendants are DISMISSED from this case with prejudice.

Dated this 27th day of October, 2023.

Tiffany M. Cartwright
United States District Court Judge